THE ARCTIC.    (Nine Cases.)

*(District Court, S. D. New York.    October 22, 1884.)*

1. LIENS MARITIME AND STATUTORY—DEPARTURE—SWORN SPECIFICATIONS.
   Under the statute of New York a lien is given for supplies to domestic vessels if a specification of the claim is filed within 12 days after she shall leave the port where the debt was contracted.
2. SAME—SUPPLIES, WHEN FURNISHED.
   The tug A., being proved to have been frequently at Jersey City and Hoboken at certain dates, *held,* that all claims for supplies furnished more than 12 days prior to such dates, without notice filed, were cut off.
3. SAME—VERIFICATION OF SPECIFICATION.
   The statute requiring the specification to be "sworn to," *held,* that the absence of a venue to the jurat was immaterial, the specification appearing to be "sworn to" before a notary public of New York county, and proof being given that it was, in fact, "sworn to" within this county.
4. SAME—ITEMS IN SPECIFICATION.
   Where the specification contained numerous items, the first item of which was, "To amount of contract, as agreed, $250," the other items being for extra work, all being stated to be for extra repairs, etc., *held,* a sufficient bill of particulars under the statute to include the contract work.
5. SAME—PRIORITY OF LIENS.
   Maritime and statutory liens for supplies hold the same rank. Ordinary repairs and supplies that are contemporaneous, or nearly so, and all recent, treated as contemporaneous, as in the case of *The Grapeshot, ante,* 123, and the costs of the necessary libels share in the fund *pro rata.*

In Admiralty.

BROWN, J. Nine libels were filed against the steam-tug Arctic to enforce the payment of alleged liens for repairs and supplies. Upon the return of process, default being made, the cases were all referred to a commissioner to report the amount due on each. The vessel in the mean time was sold. Out of the proceeds of sale, after paying the expenses and the undisputed sums due to seamen for wages, there remains in the registry of the court only the sum of $413.50,—much less than the liens claimed. The contest is among the lienors themselves. Upon three of the claims the repairs and supplies were furnished at Jersey City and Hoboken, foreign ports as respects this vessel, whose owners resided in New York. Upon these claims the commissioner has reported $584 due to the Communipaw Coal Company for coal furnished between December 11, 1883, and May 12, 1884; $16.40 due to William Horre for repairs done between January 25 and March 5, 1884; and $28.13 due to Edward P. De Mott for repairs between January 1 and February 1, 1884. In the other six cases the repairs and supplies were furnished in this city and in Brooklyn, and the liens can be sustained only under the state statute. This statute provides (Laws 1862, *c.* 482) that "in all cases such debts shall cease to be a lien  *  *  *  whenever such ship or vessel shall leave the port at which such debt was contracted, unless the person having such lien shall, within 12 days after such departure, cause to be drawn up and filed specifications of such liens, which may consist either of a bill of particulars of the demand, or a copy of any written contract under which the work may be done, with a statement of the amounts claimed to be due by such vessel, the correctness of which shall be sworn to by such person." Upon these five domestic liens no specification was filed except in the cases of Sullivan and Gladwish.

The proof shows that during the period when their supplies were furnished the tug was frequently at Jersey City and Hoboken, and took in coal there. As this was evidently in the line of her business, there must have been as frequent departures from this port, within the meaning of the statute, according to the decisions in *Hancox* v. *Dunning*, 6 Hill, 494, and *The Jenny Lind*, 3 Blatchf. 513. As more than 12 days elapsed after such departures, the lien was lost in all cases in which no specification was filed. The same consideration cuts off all of Gladwish's bill, excepting the last item of $14.40.

Further objection is made to the specification in Gladwish's case that no venue was attached to his affidavit, and the case of *Cook* v. *Staats*, 18 Barb. 407, is cited to the effect that an affidavit without a venue is a nullity. The state statute, however, does not in this case require a technical affidavit, but only that the "statement of the amounts claimed to be due from such vessels shall be sworn to by such persons." The specification in this case is sworn to by Gladwish before a notary public who signs himself, "Notary Public N. Y. Co.," and the proof shows that the verification was, in fact, made

within the notary's jurisdiction. I shall hold this to be a compliance with the statute.

The claim of Sullivan was for repairs furnished between November 14 and December 7, 1883, amounting to $364.97, $250 of which was for repairs done pursuant to a parol contract to do the repairs specified for that sum; the balance of his bill was for extra work. The specification was filed by Sullivan on the eighteenth of December, in less than 12 days after the first departure of the vessel. His specification states that $364.97 is due to him on account of work done and materials, and for articles furnished towards the building, repairing, fitting, furnishing, and equipping said vessel, of which a correct bill of particulars is annexed, the first item of which is, "To amount contract, as agreed, $250;" then follow some 30 other items of extra work. The proof shows that all the work was for repairs. Objection is made that the first item is not a bill of particulars. It is, however, a part of the bill of particulars. It is only written contracts of which a copy is required to be filed. The only additional particulars which could be given of the contract work would be the particular nature of it. No further specification of the value of each item could be given. Its general nature is already stated in the previous part of the specifications, in compliance with the statute. No question is raised as to the fact of the work being done. Most of the other items are general in their character, such as fitting, plumbing, lead-work, caulking, etc.

Upon the whole, I do not perceive any essential purpose that the bill of particulars, as it stands, does not sufficiently disclose for the information of persons dealing with the vessel. The time is stated from November 14th to December 6th, and the amount $250; and I therefore allow the lien, as filed, for the sum of $364.97, with interest.

The claims of the other libelants are disallowed. After payment of seamen's wages the residue of the fund will be insufficient to pay in full the claims here allowed. All of these claims are maritime in their nature, and they are of the same rank, being all for repairs and supplies, unless distinction be made between such as are strictly maritime liens arising in foreign ports, and those which arise under the state law in the vessel's home port. Upon this point I shall follow the decision of Mr. Justice MATTHEWS in the case of *The Guiding Star*, 18 FED. REP. 263, and *The J. W. Tucker*, 20 FED. REP. 134.

Treating all the claims here allowed as of the same rank, inasmuch as they are all recent, and are all embraced within nearly the same period, several of them more or less overlapping one another, they should be paid *pro rata*, as directed in the recent case of *The Grapeshot, ante,* 123. The costs of each necessary libel are to be added to the claims, respectively, and the fund then divided *pro rata* between them.